UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　**Plaintiff,**<br><br>　　v.<br><br>**8,911 TYPE 56-1 ASSAULT RIFLES,** *et al.***,**<br><br>　**Defendants** *In Rem***.** | Civil Action No. 23-1951 (JEB) |

## MEMORANDUM OPINION

Having seized an arsenal of weapons from four vessels in the Gulf of Oman and the Arabian Sea, the United States brought this forfeiture action *in rem*. The Defendant Properties are collections of conventional weapons and related munitions, including rifles and anti-tank missiles of Iranian, Chinese, and Russian origin. The Government alleges that the Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i) as assets of the Islamic Revolutionary Guard Corps (IRGC), a designated foreign terrorist organization. As no one else has claimed an interest or otherwise defended the action, the Clerk of Court entered a default on October 16, 2023. See ECF No. 7 (Entry of Default). The Government now moves for default judgment pursuant to Federal Rule of Civil Procedure 55 and Rule G(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. See ECF No. 9 (Pl. Mot. for DJ). As the United States has sufficiently demonstrated that the allegations in its Verified Complaint warrant such judgment, the Court will grant the Motion.

### I.   Background

Given the default in this case, the Court accepts the facts alleged in the Government's Complaint as true. The IRGC "'is a non-traditional instrumentality of Iran,' serving as 'the

1

military arm of a kind of shadow government answering directly to the Ayatollah and the mullahs who hold power in Iran.'" Christie v. Islamic Republic of Iran, No. 19-1289, 2020 WL 3606273, at *3 (D.D.C. July 2, 2020) (quoting Blais v. Islamic Republic of Iran, 459 F. Supp. 2d 40, 47 (D.D.C. 2006)).  In 2019, both the U.S. Department of Treasury and the U.S. Department of State designated the IRGC a Foreign Terrorist Organization.  See ECF No. 9-1 (Pl. Mem. Supporting DJ) at 3.  The Treasury and State Departments have both determined that the IRGC "direct[s] and implement[s] a global terrorist campaign against nations and regimes [that] they deem to be adversarial and provide support and aid to those nations and regimes they deem allied with their goals and principles."  Id.  For example, the IRGC "provide[s] military support for the Houthi movement in Yemen against the United Nations ('U.N.')-recognized Yemini government."  Id. at 4.  The United States is "investigating an Iranian maritime weapons smuggling network" that "directly supports military action by the Houthi movement in Yemen" and related terrorist activities in Yemen and the surrounding region.  See ECF No. 1 (Compl.), ¶ 1.  That investigation led to this forfeiture action.  Id.

In this case, the U.S. Navy separately interdicted four stateless dhow vessels during "routine maritime security operations conducted in and around the Gulf of Oman and the Arabian Sea."  Id., ¶ 25.  These interdictions led to the seizure of "four large caches of conventional weapons, including long arms and anti-tank missiles, and related munitions — all of which were determined to be primarily of either Iranian, Chinese, or Russian origin."  Id., ¶ 26.  The seizures took place "in accordance with international law" on or around December 20, 2021, May 6, 2021, January 6, 2023, and January 15, 2023.  Id., ¶ 25.  A U.S. Central Command official concluded that in the case of all four seizures, "[t]here is no plausible way these weapons

and munitions could have gotten onto the vessels between Iran and Yemen except that the [IRGC] has continued a pattern of smuggling lethal aid to Houthi forces in Yemen." Id., ¶ 27.

The Government filed its Verified Complaint on July 6, 2023, and obtained a warrant for arrest *in rem* on July 18, 2023. See id. & ECF No. 4 (Warrant). The Government began posting notice on a government-forfeiture site for 30 days beginning August 2, 2023. See Pl. Mem. Supporting DJ at 5. No claims were filed, and the Clerk of Court entered default on August 20. See Entry of Default. The Government now moves for default judgment and seeks forfeiture of Defendant Properties.

## II.     Legal Standard

A court may enter default judgment when the "party against whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). "This form of relief is no less appropriate when the defendant in question is property," and "unless a claimant properly intervenes to raise defenses to its forfeiture, the defendant property is deemed to have 'failed to plead or otherwise defend' against the allegations, and the Clerk of Court must enter default." United States v. All Assets Held in Account Number XXXXXXXX, 330 F. Supp. 3d 150, 156 (D.D.C. 2018) (quoting Fed. R. Civ. P. 55(a)).

Once default is entered, the defendant "is deemed to admit every well-pleaded allegation in the complaint." Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); see Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973); see also 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2688.1 (4th ed. 2021) (defaulting "defendant has no further standing to contest the factual allegations of plaintiff's claim for relief"). Nevertheless,

"[m]odern courts are . . . reluctant to enter and enforce judgments unwarranted by the facts," Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980), and "a district court may still deny an application for default judgment where the allegations of the complaint, even if true, are legally insufficient to make out a claim." Gutierrez v. Berg Contracting Inc., No. 99-3044, 2000 WL 331721, at *2 (D.D.C. Mar. 20, 2000); see also United States v. $1,0171,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd., 324 F. Supp. 3d 38, 45 (D.D.C. 2018) ("[T]he defendant['s] default notwithstanding, the plaintiff is entitled to a default judgement only if the complaint states a claim for relief.") (second alteration in original) (quoting Jackson v. Corr. Corp. of Am., 564 F. Supp. 2d 22, 26–27 (D.D.C. 2008)).

### III. Analysis

Before looking at the allegations in the Complaint, the Court examines its jurisdiction and the sufficiency of notice to potential claimants.

#### A. Jurisdiction

As a threshold matter, this Court has subject-matter jurisdiction on three independent grounds: (1) 28 U.S.C. § 1355(a), which provides that district courts "have original jurisdiction . . . of any action or proceeding for . . . forfeiture, pecuniary or otherwise, incurred under any Act of Congress"; (2) 28 U.S.C. § 1345, which provides the district courts with jurisdiction over proceedings commenced by the United States; and (3) 14 U.S.C. § 522(a) and 28 U.S.C. § 2461(b), which provide jurisdiction for property subject to forfeiture on the high seas.

This Court thus has *in rem* jurisdiction to issue a forfeiture order, and this holds true regardless of "[w]hether or not [the] foreign government will ultimately choose to comply." United States v. One Gulfstream G-V Jet Aircraft, 941 F. Supp. 2d 1, 7 (D.D.C. 2013); see also

4

United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 772 F. Supp. 2d 205, 211 (D.D.C. 2011).

  B. Notice

A forfeiture action *in rem* arising from a federal statute is governed by Supplemental Rule G of the Federal Rules of Civil Procedure.  The Government satisfied the Supplemental Rule G requirements here.  Rule G(4)(a)(i) states that "[a] judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders."  The Government fulfilled this obligation by posting timely notice on an official government-forfeiture website, www.forfeiture.gov, for at least 30 consecutive days, as required by Supplemental Rule G(4)(a)(iv)(C).  See Pl. Mem. Supporting DJ at 9.  Although the Government was also required to provide direct notice "to any person who reasonably appear[ed] to be a potential claimant on the facts known to [it]" and to send the notice "by means reasonably calculated to reach the potential claimant," Fed. R. Civ. P. Supp. R. G(4)(b)(i), (iii)(A), it was "unable to identify any potential claimants" — such as owners of the vessels from which the material was seized.  See Pl. Mem. Supporting DJ at 9 (citing ECF No. 6-1 (Aff'd in Support of Default), ¶ 5).

  C. Merits

Supplemental Rule G also requires that the Complaint "identify the statute under which the forfeiture action is brought" and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Fed. R. Civ. P. Supp. R. G(2)(e)–(f).

Plaintiff brings this action under the Civil Forfeiture section of Title 18, Crimes and Criminal Procedure.  Specifically, it claims that Defendant Properties are subject to forfeiture

under 18 U.S.C. § 981(a)(1)(G)(i), which permits forfeiture of "[a]ll assets, foreign or domestic" "of any individual, entity, or organization engaged in planning or perpetrating any . . . Federal crime of terrorism . . . against the United States." The Government has alleged sufficient facts to establish that the weapons seized belonged to the IRGC. As explained in the Complaint and documented by U.N. reports, "[T]he IRGC has a documented history of smuggling weapons from Iran to the Houthis in Yemen." See Pl. Mem. Supporting DJ at 10. Here, the Government persuasively relies on an authority from the U.S. Central Command, who concluded that "[t]here is no plausible way" the forfeited property could have been on the interdicted vessels "except that the [IRGC] has continued a pattern of smuggling lethal aid to Houthi forces in Yemen." Compl., ¶ 27. And as a designated Foreign Terrorist Organization, the IRGC fits within the definition of the statute. See Pl. Mem. Supporting DJ at 3, 10.

The Court, accordingly, finds that the Government has met its burden here.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant the Government's Motion for Default Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: December 1, 2023

6